UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

JOHN H.[1],                              )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )       CIVIL NO. 2:20cv428
                                         )
KILOLO KIJAKAZI, Acting                  )
Commissioner of Social Security,         )
                                         )
        Defendant.                       )

<u>OPINION AND ORDER</u>

This  matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) under Title II of the Social Security Act and for Supplemental Security

Income (SSI) under Title XVI of the Act.   Section 205(g) of the Act provides, inter alia, "[a]s

part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record

including the evidence upon which the findings and decision complained of are based.  The court

shall have the power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the [Commissioner], with or without

remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to

any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act

2

through September 30, 2019.

2.     The claimant has not engaged in substantial gainful activity since May 2, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.     The claimant has the following severe impairments: seizure disorder, asthma, degenerative disk disease, degenerative joint disease of the left shoulder, migraine headaches, bipolar disorder, anxiety disorder and neurocognitive disorder (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) as the claimant is able to lift and/or carry 10 pounds occasionally, sit for six hours in an eight hour workday and stand and/or walk for two hours in an eight hour workday, except: the claimant must be able to use an assistive device when ambulating, is unable to climb ladders, ropes, or scaffolds, crawl or reach overhead with the left upper extremity, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch or reach in all other directions with the left upper extremity and must avoid concentrated exposure to hazards such as unprotected heights or moving mechanical parts, extreme humidity, wetness, temperature and vibration, pulmonary irritants such as dust, odors and fumes and to loud noise without the use of hearing protection and all exposure to operating a motor vehicle. In addition, the claimant is able to perform simple, routine tasks and is able to interact with supervisors, co-workers, and the public on an occasional, brief and superficial basis as defined as no lower than an 8 in terms of the 5th digit of the DOT Code.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on December 24, 1978 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability

3

because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 2, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-33).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on August 10, 2021.  On September 21, 2021 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on October 19, 2021. Upon full review of the record in this cause, this Court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops

> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present

case, Step 5 was the determinative inquiry.

Plaintiff has reported pain in numerous areas throughout his body, including his: neck;

upper, middle, and lower back; shoulders; arms; elbows; wrists; hands; fingers; hips; buttocks;

thighs; legs; knees; calves; ankles; and feet. He also reported numbness and tingling/paresthesias.

Numbness and tingling/paresthesias particularly affected his arms, hands, fingers, legs, and feet.

He reported weakness, particularly in his arms, hands, legs, and feet. Numbness and weakness

affected his ability to perform fine motor activities. It also affected his legs, causing multiple falls.

He reported using a cane. Various things would exacerbate Plaintiff's pain, including: sitting;

maintaining prolonged position or inactivity; standing; walking; bending; activity; moving his

head side to side or up and down; lifting objects; lifting his arms; reaching overhead; using his

hands; and flexion of his wrist (Tr. 877). His pain was relieved with pain medications and rest.

Plaintiff reported that due to pain he had to change positions every 15 minutes. (Tr. 872).

During examinations, Plaintiff's cervical paravertebral muscles revealed hypertonicity,

spasms, tenderness, tight muscle bands on both sides, and he had tenderness in his paracervical

muscles, rhomboids, and sternoclavicular joint. Examination of his thoracic spine revealed

spasms and tenderness in his bilateral thoracic paravertebral muscles, and tenderness in his

paracervical muscles, rhomboids, and sternoclavicular joints. Examinations of his lumbar spine

revealed spasms and tenderness in his paravertebral muscles, and tight muscle bands and trigger

5

points, with a twitch response along with radiating pain to palpation. (Tr. 783). Plaintiff consistently had positive straight leg raise tests, bilaterally, at 60 degrees. Examinations of his hips revealed positive Pace's tests (resisted abduction of the femur while seated caused pain in the buttocks), Thomas' tests, FABER tests, and Trendelenberg's tests, and internal rotation of his femurs resulted in deep buttock pain. He had an antalgic gait. He was observed to walk slowly and use a cane. On October 5, 2015, an x-ray of Plaintiff's lumbar spine revealed mild posterior disc space narrowing at L5-S1 and minimal dextrascoliosis of the upper mid-lumbar curvature of the spine. (Tr. 440). On June 23, 2016, x-rays of Plaintiff's cervical spine showed very small marginal osteophytes, very mild degenerative changes from C4-7, and very mild degenerative changes of the facet joint. (Tr. 439). On February 15, 2017, Plaintiff underwent an EMG, which demonstrated chronic left cervical radiculopathy from C4-5. (Tr. 901). On October 5, 2015, a left shoulder x-ray showed minimal acromioclavicular joint osteoarthrosis, with mild irregularity of the superior glenoid, likely degenerative. (Tr. 439). On March 24, 2017, a left shoulder CT scan revealed a chip fracture in the anterior-inferior part of the glenoid, possibly involving the anterior-inferior labrum and indicating a Bankart lesion. (Tr. 908).

Plaintiff has been diagnosed with: cervical disc displacement without myelopathy; cervical disc displacement of the high cervical region; cervical disc displacement of the cervicothoracic region; bilateral carpal tunnel syndrome; thoracic spondylosis without myelopathy; spondylosis of the thoracolumbar region; lumbar disc displacement without myelopathy; intervertebral disc displacement of the lumbosacral region; dorsopathy; lumbago with sciatica on the right; sciatica; other compression of the spinal nerve root; pain in the joint of the pelvic region and thigh; pain in the left and right hips; sacroiliitis; and knee, leg, ankle, and

6

foot injury, not otherwise specified.  He has been prescribed: Norco; Flexeril; Cyclobenzaprine; and Zanaflex.

On May 5, 2017, Plaintiff underwent a left shoulder injection. (Tr. 921). On June 1, 2018, Plaintiff saw an orthopedic surgeon for evaluation of his left shoulder pain. (Tr. 506). On July 9, 2018, he underwent another injection in his shoulder. (Tr. 441; 485). Imaging that day revealed a SLAP lesion of the glenoid labrum, tendinosis changes of the proximal biceps tendon, and a tear of the superior glenoid labrum extending anterior to posterior. (Tr. 441; 487-88). Examinations in June and September 2018, by the orthopedic surgeon, indicated generalized left shoulder tenderness, positive O'Brien's tests, apprehension tests, and relocation tests. (Tr. 497; 508). On September 5, 2018, Plaintiff had left shoulder surgery, consisting of SLAP repair and extensive debridement. (Tr. 498). Despite surgery, his left shoulder pain continued. (Tr. 537; 729; 738. 757).

Plaintiff has consistently reported headaches and/or migraines. Those were accompanied by sensitivity to light and to sound, visual disturbance, nausea, and vomiting at times. He had them daily. He relieved headaches by taking Excedrin, going to a dim and quiet room, and sleeping or rest. He has been diagnosed with migraines. He was prescribed Excedrin.

Plaintiff has reported numerous psychological symptoms, including: depression; feeling nervous; anxiety; anger; hyperactivity (Tr. 693; 697); mood swings; auditory hallucinations; racing thoughts; paranoia (people following him); nightmares; flashbacks; inability to tolerate being in a room with the door closed; isolating; problems focusing and concentration; problems comprehending; problems with memory; and poor impulse control. (Tr. 706). He was unable to read or write at a functional level. During examinations, he had fair grooming. He had fair to poor

eye contact. His fascial expressions were depressed, anxious, or angry. His mood was depressed, anxious, or angry. His affect was restricted. (Tr. 713). His attitude was irritable (*Id*.). He was restless and hyperactive. His speech was rapid. (Tr. 702; 772). He talked to himself. His thoughts were paranoid, with loose associations, and tangential. He had auditory hallucinations. His attention was confused, distractible, inattentive, and vigilant. His concentration was noted as pre-occupied, scattered, variable, focused on irrelevancies, and interfered with by anxiety. His immediate and short-term memory and recall appeared defective. (Tr. 713). His coping skills were deficient and overwhelmed. His decision making was impulsive. (Tr. 772). He isolated. (*Id*.).

Plaintiff has been diagnosed with: depression/depressive disorder; generalized anxiety disorder; attention deficit hyperactivity disorder (ADHD) or rule out ADHD, combined presentation; post-traumatic stress disorder (PTSD) with delayed expression; and, Bipolar I Disorder, current or most recent episode depressed, severe, with psychotic features. He has been prescribed: Xanax; Lexapro; Seroquel; Klonopin; Cymbalta; and Adderall.  He attended medication management with a psychiatrist, individual therapy, and, anger management. (Tr. 717; 719; 722).

On October 8, 2018, Plaintiff underwent a psychological evaluation with Dr. Joyce Scully. Plaintiff reported hearing voices. (Tr. 535). He dreamed of dead people which scared him. (*Id*.). He often slept only about 2 hours per night. (*Id*.). Plaintiff reported difficulty in school in his youth and was placed in special education. He left school in 9th or 10th grade. (*Id*.). During the evaluation, Plaintiff was unaware of the month, date, and day. He also was unsure why he was at the evaluation. (Tr. 536). His mood was depressed and angry. (*Id*.). He could not be around other

people and looked over his shoulder. (*Id*.). Plaintiff appeared unkempt. (*Id*.). His eye contact was in and out. (*Id*.). His response time was delayed with a long latency. (*Id*.). He needed questions repeated to him multiple times. (*Id*.). He indicated he did not understand. (*Id*.). His speech did not follow, logically. (*Id*.). He did not understand proverbs. (*Id*.). He had difficulty with similarities and differences. (*Id*.). He did not know the president or vice president, and when asked to name recent presidents, he named Washington and Lincoln. (*Id*.). He could remember only 1 of 3 items named, immediately, and none after 25 minutes. (*Id*.). He was unable to do even simple math, such as 10 plus 5, even with a paper and pencil. (*Id*.). He was unable to recite the alphabet. (*Id*.). He could not count backward from 20. (*Id*.). He could not name the capital of Indiana. (*Id*.). He did not know what the equator was. (*Id*.). Plaintiff's focus and attention were not on the meeting. (*Id*.). He stood and sat throughout the evaluation. (*Id*.). The evaluator indicated that Plaintiff had the poise of someone the age of 10. (*Id*.) Dr. Scully assessed a mild neurocognitive disorder and schizophrenia. (*Id*.). She opined that if Plaintiff were to receive funds, those should be put in someone else's name. (*Id*.).

On November 5, 2018, Plaintiff underwent another psychological evaluation, this time to evaluate his memory, with Dr. Robert Walsh. (Tr. 544). During the examination, Plaintiff's hygiene was noted to be within marginal limits. (*Id*.). He was in an agitated and irritable mood, appeared that he did not want to be in the evaluation, and his affect was animated. (*Id*.). He did not appear to exactly understand why he was being evaluated and said his wife told him to be there. (*Id*.). His gait was impaired and he used a cane for assistance. (*Id*.). He had fair attention and concentration (*Id*.). He had poor insight and judgment. (*Id*.). Testing revealed significant auditory and visual immediate and delayed memory impairment, general memory and attention/

concentration impairment, and that auditory attention and concentration appeared slightly more impaired. (Tr. 545). Dr. Walsh assessed amnesic disorder not otherwise specified and rule out mild neurocognitive impairment due to seizure disorder. (*Id*.). He recommended Plaintiff continue to follow with a neuropsychologist and neurologist and opined Plaintiff would not be able to manage his own money at that time. (*Id*.).

On March 1, 2017, Dr. Julian Ungar-Sargon, Plaintiff's treating pain specialist, indicated that Plaintiff was totally unable to participate in training activities/employment due to his physical and mental limitations and that it was a permanent condition. (Tr. 433). He indicated Plaintiff could not engage in any sitting, standing, walking, lifting, grasping, pulling/pushing, or bending. (Tr. 433). He indicated Plaintiff's diagnoses included other intervertebral disc displacement, lumbar region (M51.26) and cervical disc disorder with myelopathy, unspecified cervical region (M50.00). (Tr. 433).

On October 29, 2018, Plaintiff underwent a medical consultative examination with Dr. J. Smejkal. He reported pain in various areas, including his back and left shoulder, headaches, epilepsy, blurred vision and ringing in his ears, and had difficulty being around more than two people. (Tr. 537). Pain had progressed and he had difficulty standing and walking long periods of time. He used a cane for support. (*Id*.). He could walk without a cane but only short distances. (*Id*.). His headaches were daily. (*Id*.). He reported generalized weakness and fatigue. (Tr. 538). He had mood changes. (*Id*.). During examination, Plaintiff had tenderness in his lumbar spinous and paraspinal areas and decreased lumbar range of motion, including only 20/90 forward flexion. (Tr. 541). He had pain and stiffness in his left shoulder with decreased range of motion, including only 20/150 abduction, 20/150 forward elevation, 20/80 internal rotation, and 20/90 external

10

rotation. (*Id*.) He had an antalgic gait and used a cane. (Tr. 539). He was not able to stoop and

squat completely. (*Id*.). He had difficulty walking heel to toe and tandemly. (*Id*.). He had

difficulty standing from sitting. (*Id*.). Dr. Smejkal opined Plaintiff is unable to do work related

activities such as sitting, standing, walking, lifting, carrying, and handling heavy objects, due to

lower back pain and left shoulder pain. (Tr. 540). He indicated that Plaintiff's cane was

prescribed and medically necessary. (Tr. 539).

On November 11, 2018, non-examining state agency medical consultant, Dr. R. Wenzler,

opined Plaintiff could lift/carry 10 pounds occasionally, less weight frequently, stand/walk 2

hours, and sit 6 hours, in an 8-hour workday. (Tr. 138; 155). Plaintiff could occasionally

push/pull with his left arm, occasionally reach with his left arm, except never reach overhead with

his left arm. (Tr. 138-39; 155-56). Plaintiff could occasionally climb ramps and stairs, balance,

stoop, kneel, and crouch, but never climb ladders, ropes, or scaffolds, and crawl. (Tr. 138-39;

156). He must avoid concentrated exposure to: extreme heat and cold; humidity and wetness;

noise; and vibration. (Tr. 139-40; 157). He must avoid all exposure to hazards, such as machinery

and heights. (Tr. 140; 157). He must avoid wet, slick, and uneven surfaces. (*Id*.). Dr. Wenzler

opined Plaintiff's statements about the intensity, persistence, and functionally limiting effects of

his symptoms were substantiated by the objective evidence alone. (Tr. 137; 155). On March 7,

2019, non-examining state agency medical consultant, Dr. M. Brill, found many of the same

limitations. (Tr. 175-78; 194-97). He also found Plaintiff should avoid concentrated exposure to

fumes, odors, dusts, gases, and poor ventilation. (Tr. 177-78; 196-97).

On November 8, 2018, non-examining state agency psychologist, Dr. A. Johnson, found

Plaintiff had moderate limits in his ability to understand, remember, or apply information, interact

with others, and, concentrate, persist, or maintain pace, and mild difficulties adapting or managing himself. (Tr. 136-37; 154). Dr. Johnson opined Plaintiff could understand, remember, and carry out detailed, but not complex tasks, attend to tasks for a sufficient period to complete them, manage stress involved with detailed work-related tasks, relate on a superficial and ongoing basis with co-workers and supervisors, could manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded. Plaintiff would work best alone, in semi-isolation from others, or as part of a small group. Plaintiff was able to manage at least a minimal level of relationship with others. (Tr. 144; 161). On February 18, 2019, another non-examining state agency psychologist, Dr. A Lovko, found the same limitations. (Tr. 174; 180; 182; 193; 199; 201).

In support of remand, Plaintiff first argues that the ALJ erred in his assessment of the opinion evidence. Dr. Julian Ungar-Sargon, Plaintiff's treating pain specialist, indicated that Plaintiff was totally unable to participate in training activities/employment due to his physical and mental limitations and that it was a permanent condition. (Tr. 433). He indicated Plaintiff could not engage in any sitting, standing, walking, lifting, grasping, pulling/pushing, or bending. (Tr. 433). He indicated Plaintiff's diagnoses included other intervertebral disc displacement, lumbar region and cervical disc disorder with myelopathy, unspecified cervical region. (Tr. 433).

When considering opinions, the ALJ must consider opinions offered together with the factors listed in 20 C.F.R. § 404.1520c, including supportability, consistency, relationship with the claimant, specialization, and "other factors". 20 C.F.R. § 404.1520c. The Regulation indicates the most important factors are supportability and consistency and that the ALJ must "explain how [they] considered the supportability and consistency factors…in [the] determination or decision."

12

20 C.F.R. § 404.1520c(2). The ALJ may, but is not required to explain how he considered the other factors. *Id*. However, when he finds that available opinions are equally supported and equally consistent, but that they differ, the ALJ "will articulate how [they] considered the other most persuasive factors…in [the] determination or decision." 20 C.F.R. § 404.1520c(3).

The ALJ found Dr. Ungar-Sargon's opinions "not persuasive." (Tr. 31). The ALJ found those opinions were neither supported nor consistent with the record. (Tr. 31). In particular, the ALJ indicated that Plaintiff had displayed full strength, range of motion, and sensation in his extremities, with the exception of tenderness and limited range of motion in his left shoulder, and that Plaintiff had been able to walk with the occasional use of a cane, which, the ALJ found was inconsistent with the finding that Plaintiff was completely unable to engage in physical activity. (Tr. 31).

However, Plaintiff points out that during the consultative examination with Dr. Smejkal, Plaintiff demonstrated reduced range of motion in both his left shoulder and his lumbar spine, including only 20 of 90 degrees forward flexion (bending over at the waist). (Tr. 541). Thus the ALJ was incorrect that Plaintiff demonstrated full range of motion other than his left shoulder. *Pyles v. Nwaobasi*, 829 F.3d 860, 868 (7th Cir. 2016) ("But a finding of fact is clearly erroneous if it is 'based on errors of fact or logic.'") The ALJ also mischaracterizes the record when he characterizes Plaintiff's use of a cane to walk as "occasionally." The record shows that Plaintiff was more frequently than not noted to be using a cane when he presented to appointments. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (mischaracterization of the record compromises ALJ's decision).

In addition, although no testing appears to have been done to check for weakness or

sensation changes, Plaintiff reported weakness and numbness and tingling or paresthesias in his arms, hands, fingers, legs, and feet. That caused difficulty with fine motor activities and he had fallen multiple times. Plaintiff also underwent EMG testing which suggested chronic left C4-5 radiculopathy. (Tr. 901). Consistent with Plaintiff's reports, symptoms of cervical radiculopathy include a pins-and-needles or tingling sensation, numbness, and/or weakness in the areas of the affected nerve root. Plaintiff also consistently had positive straight leg raise tests at 60 degrees. A positive straight leg raise test at 60 degrees suggests a lumbar disc herniation at the L4-5 nerve roots. Compression of the spinal nerve root can cause radicular pain down the back of the leg and even into the foot (*i.e.* lumbar radiculopathy or sciatica). Also, Plaintiff was diagnosed with carpal tunnel syndrome of both upper extremities, compression of a spinal nerve root, sciatica, and both cervical disc displacement and lumbar disc displacement.

Plaintiff argues that the ALJ was not permitted to ignore this entire line of evidence when considering Dr. Ungar-Sargon's opinions which could have been based, at least in part, on Plaintiff's reported symptoms, and supported by the objective evidence of neurological abnormalities. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (ALJ not permitted to ignore an entire line of evidence). Dr. Ungar-Sargon was allowed to consider Plaintiff's reported symptoms when forming his opinions and treatment plan. *Price v. Colvin*, 794 F.3d 836, 839 (7th Cir. 2015) ( "[the treating doctor's] professional training and experience would have taught him how to discount exaggerated statements by his patients."); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (doctors would not have prescribed medication and other treatment if they thought the claimant were faking her symptoms).

Plaintiff argues that even if the ALJ had not mistaken or mischaracterized the evidence,

the ALJ still erred because he did not explain his conclusion that full strength, range of motion, and sensation, undermined Dr. Ungar-Sargon's opinions. Here, as Plaintiff points out, the ALJ gave no explanation and pointed to no evidence to support his contention that without strength deficits, sensation abnormalities, or, reduced range of motion, Dr. Ungar-Sargon's opinions could not possibly be supported. *Moore*, 743 F.3d at 1121 (ALJ must build logical analytical bridge from evidence to conclusions). Further, the ALJ should have explained why those particular examination findings outweighed the numerous abnormal examination findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2000) (ALJ "…made no attempt to explain why the other evidence in the record, which appears to favor Zurawski [ ], was overcome by the evidence on which she relied.").

Plaintiff further points out that Dr. Ungar-Sargon was aware of the examination findings and, based on his medical knowledge and knowledge of Plaintiff's condition, opined Plaintiff could not sit, stand, walk, grasp, lift, push/pull, or bend, and was totally unable to participate in training activities or employment due to his physical condition. Similarly, after examining Plaintiff, consultative physician, Dr. Smejkal, also opined Plaintiff was unable to perform work related activities such as sitting, standing, walking, lifting, carrying, and handling very heavy objects, due to lower back and left shoulder pain. (Tr. 540). The ALJ found Dr. Smejkal's opinions persuasive, but inexplicably, found Dr. Ungar-Sargon's nearly identical opinions not persuasive and adopted neither. Plaintiff contends that this was internally inconsistent. *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (ALJ erred failing to reconcile inconsistent findings).

The ALJ also found Dr. Ungar-Sargon's opinions not persuasive because during the day Plaintiff was able to interact with various family members and able to attend court hearings on a

15

regular basis. (Tr. 31). However, as Plaintiff notes, the ALJ did not explain how those activities undermined the Doctor's opinions about Plaintiff's physical functioning and ability to work. *Moore*, 743 F.3d at 1121 (ALJ must build logical bridge). There is no evidence interacting with family members or attending court hearings (which Plaintiff very likely had no option to not attend) were comparable to the physical activities Plaintiff would be expected to perform during a competitive, full-time job, which Dr. Ungar-Sargon opined Plaintiff would not be able to perform. The Seventh Circuit has recognized "critical differences between activities of daily living and activities in a full-time job…" including greater flexibility, receiving help from others, and not being held to a minimum standard of performance. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

The ALJ also found that Dr. Ungar-Sargon's opinions were conclusory and noted that opinions regarding disability are reserved to the Commissioner (*i.e.* the ALJ at the hearing level). (Tr. 31). However, Dr. Ungar-Sargon did not merely make a conclusory statement that Plaintiff was disabled or that he was unable to work. He specifically indicated that Plaintiff had functional limits in his ability to sit, stand, walk, grasp, lift, push, pull, and bend. (Tr. 433). In addition, although his opinion does not include examination findings, the record includes Dr. Ungar-Sargon's treatment notes with his examination findings and Plaintiff's reported symptoms, which explain and support his opinions. *Todd v. Colvin*, 2012 WL 3096681, *7-8 (N.D. Ill., 2012) (a form report should not be rejected for failure to explain the basis of opinions when the doctor's treatment notes were in the record). Although the final determination of disability is reserved to the Commissioner, an opinion that a claimant is disabled should not automatically be rejected. *Bjornson*, *supra* at 647-48; *Hamilton v. Colvin*, 525 Fed. Appx. 433, 439 (7th Cir. 2013).

16

The Commissioner has not responded to Plaintiff's argument that the ALJ incorrectly stated that Plantiff had a full range of motion other than limitations to his left shoulder, as Plaintiff also had reduced range of motion in his lumbar spine.  The Commissioner has also not responded to Plaintiff's argument that the ALJ mischaracterized the record regarding the frequency of Plaintiff's use of a cane.  The Commissioner also ignored Plaintiff's argument that he reported weakness and numbness, tingling, and paresthesias in his extremities and testing and imaging demonstrated findings consistent with cervical radiculopathy and sciatica, consistent with those reports.  Thus, the Commissioner has waived argument on these points. *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (failure to oppose an argument permits inference of acquiescence/waiver); *see also, Dogan v. Astrue*, 751 F.Supp.2d 1029, 1042 (N.D. Ind., 2010) (collecting 7th Circuit district cases holding the Commissioner's failure to address one of a claimant's arguments amounts to waiver).

With respect to Plaintiff's argument that the ALJ failed to explain his conclusion that specific examination findings undermined Dr.Ungar-Sargon's opinions, the Commissioner merely reiterates that the ALJ found full strength, range of motion, and sensation, inconsistent with Dr. Ungar-Sargon's opinions, noting specific findings in the record by other providers. However, the Commissioner did not address Plaintiff's arguments that the ALJ did not point to any evidence that those findings were inconsistent with Dr. Ungar-Sargon's opinions and the ALJ did not explain how he weighed those findings against the other evidence. As the Commissioner has failed to address those arguments, he has waived them. *Cincinnati Ins*. Co., 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

The Commissioner argues that the ALJ noted Plaintiff had been able to walk, with a cane,

17

contrary to Dr. Ungar-Sargon's opinion that Plaintiff could not walk. However, the ALJ did not

explain how the fact that Plaintiff was able to walk, with a cane, was inconsistent with the

Doctor's opinion that Plaintiff could not walk enough to participate in training activities or

employment. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) (ALJ must build logical

bridge from evidence to conclusions).

The Commissioner argues that Dr. Ungar-Sargon's opinions were inconsistent with state

agency doctors, Drs. Wenzler and Brill's opinions. However, the ALJ did not advance that as a

reason to discount Dr. Ungar-Sargon's opinions. The Commissioner may not advance that where

the ALJ did not. *Hanso*n, 760 F.3d at 762. Further, a contrary opinion from a non-examining

doctor is not enough to discount the opinions of a long-term treating physician. *Gudgel v.*

*Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). In addition, the consultative examiner, Dr. Smejkal,

opined Plaintiff was unable to perform work related activities such as sitting, standing, walking,

lifting, and carrying, consistent with Dr. Ungar-Sargon's opinions. (Tr. 540). The ALJ does not

appear to have considered that those opinions were consistent, which should have weighed in

favor of finding Dr. Ungar-Sargon's opinions more persuasive. The ALJ found those opinions

persuasive but found Dr. Ungar-Sargon's nearly identical opinions unpersuasive, without

explanation. The Commissioner argues that the ALJ found some of Dr. Smejkal's opinions

persuasive and adopted them, and others not persuasive. However, again, the ALJ's decision does

not reflect those findings and the Commissioner's post-hoc rationalization fail. *Hanson*, 760 F.3d

at 762.

For all of the above reasons, remand is warranted on the issue of the proper analysis of Dr.

Ungar-Sargon's opinions.

18

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence.  Plaintiff claims that the RFC is not supported with respect to (1) reaching, (2) handling and fingering, (3) pain and numbness, (4) headaches, and (5) concentration, persistence, pace. The Court will address each of these in order.

The ALJ found Plaintiff could occasionally reach in all directions with his upper left extremity, but never overhead, and placed no limits on reaching with Plaintiff's right upper extremity. (Tr. 22). Dr. Ungar- Sargon opined Plaintiff could not engage in lifting, grasping, pulling or pushing. (Tr. 433). As discussed above the ALJ did not find that Doctor's opinions persuasive and did not adopt the opinions. Dr. Smejkal, the consultative examiner, opined Plaintiff could not lift, carry, or handle heavy objects. (Tr. 540). Without explanation, the ALJ found those opinions persuasive but did not adopt those findings. Thus, the ALJ did not reach his conclusions about Plaintiff's ability to reach from either Dr. Ungar-Sargon or Dr. Smejkal. Both state agency medical consultants, Dr. Wenzler and Dr. Brill, opined that Plaintiff could occasionally reach with his left arm, except never overhead. (Tr. 138-39; 155-56; 176;195). The ALJ found both opinions persuasive. (Tr. 30). Plaintiff argues that the ALJ's failure to explain how he determined the reaching restrictions renders the ALJ's RFC findings unsupported by substantial evidence. *Briscoe ex. rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (ALJ's failure to explain how he arrived at his RFC under SSR 96-8p "…in itself is sufficient to warrant reversal of the ALJ's decision").

In response, the Commissioner argues that because the ALJ's reaching limits are supported by Drs. Wenzler and Brill's opinions, and it is up to the ALJ to resolve any evidentiary conflicts, there is no error.  However, the Commissioner fails to recognize that the ALJ did not

acknowledge or resolve the inconsistency between the evidence and the state agency doctors' opinions. Since the evidence of Plaintiff's left shoulder range of motion showed that Plaintiff did not have sufficient range of motion to reach forward or out to the side the requisite 90 degrees, that evidence appears inconsistent with Drs. Wenzler and Brill's opinions that Plaintiff could reach forward or to the side.  The Commissioner is correct it was up to the ALJ to resolve any inconsistencies, however, the ALJ failed to do so here. Rather, the ALJ appears to have adopted the state agency opinions without addressing or resolving the apparent inconsistency between their opinions and the evidence. The ALJ's failure to resolve that inconsistency before relying on the state agency consultants' opinions, renders the ALJ's RFC assessment not supported by substantial evidence and warrants remand.

Plaintiff also contends that the ALJ did not explain why he did not include limits in handling and fingering. Plaintiff notes that he consistently reported pain affecting his neck, both shoulders, both elbows, arms, wrists, hands, and fingers. His pain was worse with reaching behind and overhead, lifting his arms, pushing and pulling, as well as using his hands. He reported numbness and tingling or paresthesias in his arms, hands, and fingers. He reported weakness in his arms, hands, and fingers. He had problems with fine motor activities. An EMG revealed chronic left cervical radiculopathy from C4-5. (Tr. 901). Plaintiff was diagnosed with bilateral carpal tunnel syndrome. Plaintiff argues that given the ample evidence that he had difficulty using his hands, the ALJ should have considered whether Plaintiff's impairments would cause limits handling and fingering, particularly since Plaintiff was limited to sedentary work, which, usually requires good use of the hands. *Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014). Significantly, all of the jobs the ALJ identified that Plaintiff could still do require frequent

20

handling and fingering. The vocational expert also testified that if a worker were limited to occasionally handling and fingering no work would be available at the sedentary level. (Tr. 94).

In response, the Commissioner argues it was Plaintiff's burden to establish the existence of functional limitations and Plaintiff failed to do so. However, Plaintiff provided extensive evidence of limits using his hands.  That is all Plaintiff was required to do. It was then the ALJ's responsibility to take the evidence Plaintiff provided, analyze it, and assess Plaintiff's RFC. 20 C.F.R. § 404.1545; SSR 96-8p. The Commissioner argues that since the state agency doctors, Wenzler and Brill, opined Plaintiff did not have any limits handling and fingering, and the ALJ relied on those doctors' opinions, there was no error. However, the ALJ did not discuss the evidence regarding limits in handling and fingering, did not indicate what he thought of it, and did not indicate that he relied on the state agency doctors' opinions on that particular point. The Commissioner may not advance evidence or reasons to support the ALJ's conclusions which the ALJ did not provide himself. *Hanson*, 760 F.3d at 762. Thus, remand is warranted on this RFC issue.

The ALJ limited Plaintiff to performing sedentary work, including lifting/carrying 10 pounds occasionally, sitting 6 hours, and standing/walking 2 hours, in an 8-hour workday, and added that Plaintiff must be able to use an assistive device when ambulating. (Tr. 22). However, as discussed above, Plaintiff reported symptoms of lumbar radiculopathy, including pain, numbness and tingling, and weakness in his back, legs, and feet. He consistently reported that his pain was made worse by both standing and walking and by sitting. He had positive straight leg raise tests which supported the presence of radiculopathy/sciatica. He was diagnosed with lumbar radiculopathy/sciatica. The ALJ noted Plaintiff had degenerative disc disease but did not discuss

21

lumbar radiculopathy/sciatica. (Tr. 18-19). The ALJ did not discuss radiculopathy or Plaintiff's

problems sitting. Plaintiff argues that the ALJ was not permitted to ignore that entire line of

evidence. *Arnett*, 676 F.3d at 592. In addition, Plaintiff reported pain in his hips and examinations

revealed positive Pace tests, Thomas tests, FABER tests, Trendelenberg tests, and, internal

rotation of his femurs caused deep buttock pain. The ALJ does not appear to have considered

whether Plaintiff's hip impairments would cause problems sitting.

In response, the Commissioner argues that the ALJ was not required to accept all of

Plaintiff's reported limits. However, Plaintiff did not contend that the ALJ was required to adopt

Plaintiff's reports as fact. Rather, Plaintiff argued that the ALJ did not grapple with the entire line

of evidence regarding lumbar radiculopathy, including the diagnosis, supported by straight leg

raise tests, which supported Plaintiff's statements, and the ALJ was at least required to address

that evidence and explain why it was rejected. *Arnett*, 676 F.3d at 592. This Court agrees that the

ALJ's failure to consider Plaintiff's problems with prolonged sitting warrants remand. *Liggins v.

Colvin*, 593 Fed. Appx. 564, 569 (7th Cir. 2015).

Plaintiff points out that he has consistently reported suffering from headaches and/or

migraines. The ALJ acknowledged Plaintiff's migraine headaches and found them severe. (Tr.

18-19). As such, by definition, the ALJ found migraine headaches caused more than minimal

limits on Plaintiff's ability to perform basic work related tasks. 20 C.F.R. § 404.1522(a) ("An

impairment or combination of impairments is not severe if it does not significantly limit your

physical or mental ability to do basic work activities."). The ALJ indicated Plaintiff's headaches

were accommodated by the limit to sedentary work. (Tr. 29). Plaintiff argues that he did not

allege that standing or walking caused his headaches, or that sitting, alone, would preclude them.

Plaintiff notes that the ALJ did not explain what evidence he relied upon to conclude that Plaintiff's migraine headaches would not affect his ability to work if he were limited to sedentary work. *Moore*, 743 F.3d at 1121 (ALJ must build logical analytical bridge). Further, the ALJ did not address any of the factors which Plaintiff indicated did cause and/or exacerbate his headaches, including light or noise. When assessing a claimant's RFC, the ALJ must explain what evidence he relied on and how it led to his RFC. SSR 96-8p. Since the RFC is what a claimant is able to do on a regular and continuing basis, the ALJ was required to consider what Plaintiff could do on his worst days, not only his best days. SSR 96-8p. However, the ALJ made no finding of what frequency Plaintiff would be expected to have a migraine headache or that Plaintiff relieved those by laying down in a dim, quiet room.  *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012) (RFC should not be evaluated exclusively by her best days, noting that intermittent attendance normally precludes holding down a steady job).

In response, the Commissioner argues that Plaintiff did not identify any medical opinion evidence of greater functional limits than the ALJ found. However the Commissioner cites no authority indicating that limits from headaches must be supported by a medical opinion to be credited. The Seventh Circuit has ruled that an ALJ should not rely on the absence of information in a doctor's report to establish RFC facts since the regulations do not require a consulting doctor to report all limitations to the ALJ. *Israel v. Colvin*, 840 F.3d 432, 438 (7th Cir. 2016). The Commissioner cites *Gedatus* for the proposition that the claimant must provide evidence of limits from their impairments, including indicating what additional limits were warranted beyond those the ALJ assessed. *Gedatus v. Saul*, 994 F.3d 893, 904-05 (7th Cir. 2021). However, Plaintiff did identify limits greater than those the ALJ found, including that when Plaintiff had a headache he

needed to lie down, in a dark room, and that headaches could last up to two hours. The ALJ's failure to adequately consider Plaintiff's headaches, the frequency, severity, or what he must do to relieve them, and include those limitations in his RFC assessment (or explain the omission), rendered his decision not supported by substantial evidence. Thus, remand is required on this RFC issue.

In the decision, the ALJ found Plaintiff had moderate limits maintaining concentration, persistence, or pace. (Tr. 21). Then he found Plaintiff could perform simple, routine tasks, with additional social limitations. (Tr. 22). When an ALJ finds moderate difficulties maintaining concentration, persistence, or pace, those must be included in the questions posed to the vocational expert and also included in the RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-20 (7th Cir. 2010). The terms used must capture the particular claimant's "temperamental deficiencies and limitations." *O'Connor-Spinner*, *supra*. Therefore, the ALJ must make specific findings about what caused Plaintiff's specific problems concentrating, persisting, or maintaining pace, then explain how the limits included in the RFC assessment accommodate Plaintiff's specific problems. Plaintiff argues that the ALJ also did not explain how he concluded that merely limiting Plaintiff to simple, routine tasks would account for all of Plaintiff's problems with concentration, persistence, or pace.

In response,  the Commissioner characterized Plaintiff's argument as only that the ALJ should have questioned the vocational expert about moderate limits in concentration, persistence, or pace. However, as Plaintiff explains in reply, his argument is both that the ALJ failed to indicate how he concluded that Plaintiff had moderate limits in concentration, persistence, or

pace, and that the ALJ failed to include Plaintiff's specific limits in concentration, persistence, or pace in his questions to the vocational expert. The Commissioner argues that the limits the ALJ assessed were supported by the state agency psychological consultants' opinions (Drs. Johnson and Lovko) and thus the ALJ's limits were supported by substantial evidence. However, although the ALJ found those doctors' opinions persuasive, he did not indicate he relied on their ultimate conclusions to reach his mental RFC findings. A review of those doctors' opinions demonstrates that the doctors did not opine Plaintiff was limited to simple, routine tasks. (Tr. 142-44; 159-61; 180-82; 199-201). The Commissioner cannot cite evidence to support the ALJ's decision which the ALJ did not indicate relying upon. *Hanson*, 760 F.3d at 762. Even if the ALJ derived his ultimate limits from the opinions of the state agency psychologists, he had to explain his reasoning. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The ALJ's failure to explain what evidence led to his RFC assessment on this issue warrants remand. *Briscoe*, 425 F.3d at 352.

In sum, the Court finds remand appropriate on all five of the RFC issues raised by Plaintiff, as discussed above.

Next, Plaintiff argues that the ALJ's analysis of his subjective symptoms was legally insufficient. The ALJ found Plaintiff's reported symptoms and limitations were "not entirely consistent" with the other evidence in the record. (Tr. 23). The ALJ outlined objective evidence which he found undermined Plaintiff's symptoms. (Tr. 29). However, Plaintiff points out that the ALJ did not explain why the outlined evidence undermined Plaintiff's reported symptoms. A summary of the evidence is not the same as an analysis. *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (no logical bridge where the ALJ merely recited the medical evidence but did not

25

analyze it).

Further, the ALJ is not permitted to rely solely on the objective medical evidence to discount a claimant's statements. SSR 16-3p; 20 C.F.R. § 404.1529. Rather, the ALJ must undertake a two-step process. First, he must consider whether the claimant has underlying medically determinable impairments which could reasonably be expected to produce their symptoms, such as pain. If yes, then the ALJ must evaluate the intensity and persistence of the claimant's reported symptoms to determine the extent to which those symptoms limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1529; SSR 16-3p; *Zurawski*, 245 F.3d at 888. Among those factors are: the nature and intensity of symptoms or pain; precipitating or aggravating factors; relieving factors; dosage and effectiveness of medications; treatment; non-treatment measures used to relieve symptoms; opinions or observations of physicians; functional restrictions; claimant's prior work record; and daily activities; and any other factors regarding the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529; SSR 16-3p; *Zurawski*, 245 F.3d at 887-88.

Here, Plaintiff reported significantly limited daily activities. (Tr. 62-64; 73-74; 83; 86; 358-64). Yet, the ALJ did not discuss those activities in any detail and did not discuss Plaintiff's activities in relation to his analysis of Plaintiff's subjective symptoms. The ALJ should have considered that Plaintiff's activities were significantly limited, which supports Plaintiff's reported symptoms. *Zurawski*, *supr*a at 887-88 (ALJ should have considered that claimant's activities were fairly restricted). In his decision, the ALJ only summarized Plaintiff's treatment history, including the doctors he had seen and the treatment he had undergone.  The ALJ did not analyze Plaintiff's treatment history or explain how Plaintiff's treatment history supported or detracted from

Plaintiff's reported symptoms and limitations. Additionally, Plaintiff reported numerous aggravating and relieving factors, particularly for his body pain and headaches. The ALJ should have discussed aggravating and relieving factors. 20 C.F.R. § 404.1529; 16-3p. The ALJ also should have considered Plaintiff's medications, including Norco, and explained how that factored into his assessment of Plaintiff's pain and other symptoms. 20 C.F.R. § 404.1529; SSR 16-3p. *Stark v. Colvin*, 813 F.3d 684, 687-88 (7th Cir. 2016) (use of prescription medication is objective evidence that can support an individual's assertions of pain).

The state agency medical consultants both indicated that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his symptoms were substantiated by the objective evidence alone. (Tr. 137; 155; 175; 194). The ALJ was required to consider this fact. 20 C.F.R. § 404.1529(c)(3). Plaintiff had a good work history, earning between $42,000 and $56,000 in the several years prior to his disability. (Tr. 327). A claimant's work history is one factor which can weigh in favor of their reported inability to work any longer. *Stark*, 813 F.3d at 689. Plaintiff concludes that the ALJ's failure to analyze the relevant regulatory factors, such as those outlined above, renders the ALJ's analysis of Plaintiff's symptoms legally insufficient, and unsupported by substantial evidence. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003).

In response, the Commissioner again notes that the ALJ considered the physical examination findings and found that evidence of full strength and range of motion, without tenderness, weighed against Plaintiff's statements. However, again, the ALJ did not point to any evidence to support his conclusion that without strength deficits, range of motion limits, or tenderness, Plaintiff's statements about his symptoms, particularly pain, and resulting limitations, were not credible. The Commissioner states that the ALJ "observed" that diagnostic scans of

Plaintiff's spine and testing had showed mild or generally unremarkable results, with the exception of Plaintiff's shoulder. However, the ALJ did not indicate any special reliance on any of the diagnostic scans or testing to discount Plaintiff's statements. Also, "observing" evidence and noting it in summary, is not analysis. The ALJ was required to make some connection between the evidence he relied on and the conclusion he reached, explaining how the evidence led to his conclusion. The ALJ failed to point to any evidence or opinions to support his lay determination that mild findings on imaging or diagnostic testing addressed the level of pain and limitations Plaintiff reported. As Plaintiff argues, the ALJ is not permitted to interpret objective imaging and diagnostic studies on his own and reach conclusions about what they mean, without evidence to support those conclusions. *Engstrand v. Colvin*, 788 F.3d 655, 660-61 (7th Cir. 2015) (ALJ erred by "playing doctor" where she interpreted the significance of medical evidence on her own); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016).

The Commissioner argues that the ALJ "observed" that after Plaintiff's September 2018 shoulder surgery, Plaintiff managed his symptoms with medications.  If the ALJ relied on that he should have made that clear in his decision, rather than merely noting it in passing. *Golembiewski*, 322 F.3d at 915 (ALJ decision must contain "specific reasons" for the ALJ's conclusion- findings "must be specific and not implied" in the decision). Even if the ALJ had relied on perceived conservative treatment, the ALJ was required to consider the reasons offered. SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons…"); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). The ALJ also was required to consider whether more invasive treatment was an option for Plaintiff, before concluding that lack of such treatment undermined Plaintiff's

statements. If there were no more invasive treatment options available, lack of such treatment did not speak to the severity of Plaintiff's symptoms and limits, and the conclusion otherwise was not supported by substantial evidence. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *Voigt v. Colvin*, 781 F.3d 871, 877 (7th Cir. 2015).

The Commissioner argues the ALJ also considered the medical opinion evidence, which, she argues, was inconsistent with Plaintiff's allegations of disabling symptoms. Again, the ALJ did not indicate that he considered the opinion evidence, or any particular opinions, when he made the decision to discount Plaintiff's statements. Further, some of those opinions were consistent with Plaintiff's statements (Dr. Ungar-Sargon and Dr. Smejkal) and other were not (the state agency doctors). Again, the state agency doctors indicated that Plaintiff's statements were substantiated by the objective evidence alone, which, the ALJ did not appear to consider or rely upon, since he decided otherwise.

The ALJ's failure to provide proper analysis of Plaintiff's subjective symptoms warrants remand for proper evaluation. *Zurawski*, 245 F.3d at 887-88.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.


 Entered: December 13, 2021.


                          s/ William C.  Lee
                          William C. Lee, Judge
                          United States District Court